Justice Alito
delivered the opinion of the Court.
The Armed Career Criminal Act (ACCA), 18 U. S. C. § 924(e)(1) (2000 ed., Supp. IV), provides that a defendant convicted of possession of a firearm by a convicted felon, in violation of § 922(g), is subject to a mandatory sentence of 15 years of imprisonment if the defendant has three prior convictions “for a violent felony or a serious drug offense.” The question before us is whether attempted burglary, as defined by Florida law, is a “violent felony” under ACCA. We hold that it is, and we therefore affirm the judgment of the Court of Appeals.
I
Petitioner Alphonso James pleaded guilty in federal court to one count of possessing a firearm after being convicted of a felony, in violation of § 922(g)(1). In his guilty plea, James *196 admitted to the three prior felony convictions listed in his federal indictment. These included a conviction in Florida state court for attempted burglary of a dwelling, in violation of Fla. Stat. §§810.02 and 777.04 (1993).[1]
At sentencing, the Government argued that James was subject to ACCA’s 15-year mandatory minimum term because of his three prior convictions. James objected, arguing that his attempted burglary conviction did not qualify as a “violent felony” under 18 U. S. C. § 924(e). The District Court held that attempted burglary is a violent felony, and the Court of Appeals for the Eleventh Circuit affirmed that holding, 430 F. 3d 1150, 1157 (2005). We granted certiorari, 547 U. S. 1191 (2006).
II
A
ACCA’s 15-year mandatory minimum applies “[i]n the case of a person who violates section 922(g) of this title [the felon in possession of a firearm provision] and has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another.” § 924(e)(1) (2000 ed., Supp. IV). ACCA defines a “violent felony” as
“any crime punishable by imprisonment for a term exceeding one year ... that—
“(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
“(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” § 924(e)(2)(B).
*197 Florida defined the crime of burglary at the time of James’ conviction as follows: “ ‘Burglary’ means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.” Fla. Stat. §810.02(1). Florida’s criminal attempt statute provided: “A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt.” § 777.04(1). The attempted burglary conviction at issue here was punishable by imprisonment for a term exceeding one year.
The parties agree that attempted burglary does not qualify as a “violent felony” under clause (i) of ACCA’s definition because it does not have “as an element the use, attempted use, or threatened use of physical force against the person of another.” 18 U. S. C. § 924(e)(2)(B)(i). Nor does it qualify as one of the specific crimes enumerated in clause (ii). Attempted burglary is not arson or extortion. It does not involve the use of explosives. And it is not “burglary” because it does not meet the definition of burglary under ACCA that this Court set forth in Taylor v. United States, 495 U. S. 575, 598 (1990): “an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.” See Fla. Stat. § 777.04(1) (crime of attempt under Florida law requires as an element that the defendant “fai[l] in the perpetration or [be] intercepted or prevented in the execution” of the underlying offense).
The question before the Court, then, is whether attempted burglary, as defined by Florida law, falls within ACCA’s residual provision for crimes that “otherwise involv[e] conduct that presents a serious potential risk of physical injury to another.” 18 U. S. C. § 924(e)(2)(B)(ii).
*198 B
Before determining whether the elements of attempted burglary under Florida law qualify under ACCA’s residual provision, we first consider James’ argument that the statute’s text and structure categorically exclude attempt offenses from the scope of the residual provision. We conclude that nothing in the plain language of clause (ii), when read together with the rest of the statute, prohibits attempt offenses from qualifying as ACCA predicates when they involve conduct that presents a serious potential risk of physical injury to another.
James first argues that the residual provision of clause (ii) must be read in conjunction with clause (i), which expressly includes in its definition of “violent felony” offenses that have “as an element the... attempted use... of physical force against the person of another.” § 924(e)(2)(B)(i) (emphasis added). James thus concludes that Congress’ express inclusion of attempt offenses in clause (i), combined with its failure to mention attempts in clause (ii), demonstrates an intent to categorically exclude attempt offenses from the latter provision.
We are not persuaded. James’ reading would unduly narrow clause (ii)’s residual provision, the language of which does not suggest any intent to exclude attempt offenses that otherwise meet the statutory criteria. Clause (i), in contrast, lacks a broad residual provision, thus making it necessary to specify exactly what types of offenses — including attempt offenses — are covered by its language. In short, “the expansive phrasing of” clause (ii) “points directly away from the sort of exclusive specification” that James would read into it. Chevron U S. A. Inc. v. Echazabal, 536 U. S. 73, 80 (2002); see also United States v. Davis, 16 F. 3d 212, 217 (CA7) (rejecting argument that “had Congress wished to include attempted burglary as a § 924(e) predicate offense, it would have done so expressly” as “untenable in light of the very existence of the ‘otherwise’ clause, which Congress *199 plainly included to serve as a catch-all provision”), cert, denied, 513 U. S. 945 (1994).
James next invokes the canon of ejusdem generis — that when a general phrase follows a list of specifies, it should be read to include only things of the same type as those specifically enumerated. He argues that the “common attribute” of the offenses specifically enumerated in clause (ii) — burglary, arson, extortion, and crimes involving the use of explosives — is that they are all completed offenses. The residual provision, he contends, should similarly be read to extend only to completed offenses.
This argument is unavailing. As an initial matter, the premise on which it depends — that clause (ii)’s specifically enumerated crimes are limited to completed offenses — is false. An unsuccessful attempt to blow up a government building, for example, would qualify as a specifically enumerated predicate offense because it would “involv[e] [the] use of explosives.” See, e.g., § 844(f)(1) (2000 ed., Supp. IV) (making it a crime to “maliciously damag[e] or destro[y], or attempft] to damage or destroy, by means of fire or an explosive,” certain property used in or affecting interstate commerce (emphasis added)).
In any event, the most relevant common attribute of the enumerated offenses of burglary, arson, extortion, and explosives use is not “completion.” Rather, it is that all of these offenses, while not technically crimes against the person, nevertheless create significant risks of bodily injury or confrontation that might result in bodily injury. As we noted in Taylor:
“Congress thought that certain general categories of property crimes — namely burglary, arson, extortion, and the use of explosives — so often presented a risk of injury to persons, or were so often committed by career criminals, that they should be included in the enhancement statute even though, considered solely in terms of their statutory elements, they do not necessarily involve the *200 use or threat of force against a person.” 495 U. S., at 597.
See also id., at 588 (noting that Congress singled out burglary because it “often creates the possibility of a violent confrontation”); United States v. Adams, 51 Fed. Appx. 507, 508 (CA6 2002) (arson presents “a serious potential risk of physical injury to another” because “[n]ot only might the targeted building be occupied,” but also “the fire could harm firefighters and onlookers and could spread to occupied structures”); H. R. Rep. No. 99-849, p. 3 (1986) (purpose of clause (ii) was to “add State and Federal crimes against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person”).
Congress’ inclusion of a broad residual provision in clause (ii) indicates that it did not intend the preceding enumerated offenses to be an exhaustive list of the types of crimes that might present a serious risk of injury to others and therefore merit status as a § 924(e) predicate offense. Nothing in the statutory language supports the view that Congress intended to limit this category solely to completed offenses.
C
James also relies on ACCA’s legislative history to buttress his argument that clause (ii) categorically excludes attempt offenses. In the deliberations leading up to ACCA’s adoption in 1984, the House rejected a version of the statute that would have provided enhanced penalties for use of a firearm by persons with two prior convictions for “any robbery or burglary offense, or a conspiracy or attempt to commit such an offense.” S. 52, 98th Cong., 2d Sess., § 2 (1984) (emphasis added). The bill that ultimately became law omitted any reference to attempts, and simply defined “violent felony” to include “robbery or burglary, or both.” Armed Career Criminal Act of 1984, § 1802, 98 Stat. 2185, repealed in 1986 by Pub. L. 99-308, § 104(b), 100 Stat. 459. James argues *201 that Congress’ rejection of this explicit “attempt” language in 1984 evidenced an intent to exclude attempted burglary as a predicate offense.
Whatever weight this legislative history might ordinarily have, we do not find it probative here, because the 1984 enactment on which James relies was not Congress’ last word on the subject. In 1986, Congress amended ACCA for the purpose of “‘expanding’ the range of predicate offenses.” Taylor, supra, at 584. The 1986 amendments added the more expansive language that is at issue in this case — including clause (ii)’s language defining as violent felonies offenses that are “burglary, arson, or extortion, involv[e] use of explosives, or otherwise involv[e] conduct that presents a serious potential risk of physical injury to another.” Career Criminals Amendment Act of 1986, § 1402(b), 100 Stat. 3207-40, codified at 18 U.S.C. § 924(e)(2)(B)(ii). This language is substantially broader than the 1984 provision that it amended. Because both the Government and the Court of Appeals relied on the broader language of the 1986 amendments — specifically, the residual provision — as the textual basis for including attempted burglary within the law’s scope, Congress’ rejection of express language including attempt offenses in the 1984 provision is not dispositive. Congress did not consider, much less reject, any such language when it enacted the 1986 amendments. What it did consider, and ultimately adopted, was a broadly worded residual clause that does not by its terms exclude attempt offenses, and whose reach is broad enough to encompass at least some such offenses.
Ill
Having concluded that neither the statutory text nor the legislative history discloses any congressional intent to categorically exclude attempt offenses from the scope of § 924(e)(2)(B)(ii)’s residual provision, we next ask whether attempted burglary, as defined by Florida law, is an offense that “involves conduct that presents a serious potential risk *202 of physical injury to another.” In answering this question, we employ the “ ‘categorical approach’ ” that this Court has taken with respect to other offenses under ACCA. Under this approach, we “Took only to the fact of conviction and the statutory definition of the prior offense,’” and do not generally consider the “particular facts disclosed by the record of conviction.” Shepard v. United States, 544 U. S. 13, 17 (2005) (quoting Taylor, 495 U. S., at 602). That is, we consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.
A
We begin by examining what constitutes attempted burglary under Florida law. On its face, Florida’s attempt statute requires only that a defendant take “any act toward the commission” of burglary. Fla. Stat. § 777.04(1). James contends that this broad statutory language sweeps in merely preparatory activity that poses no real danger of harm to others — for example, acquiring burglars’ tools or casing a structure while planning a burglary.
But while the statutory language is broad, the Florida Supreme Court has considerably narrowed its application in the context of attempted burglary, requiring an “overt act directed toward entering or remaining in a structure or conveyance.” Jones v. State, 608 So. 2d 797, 799 (1992). Mere preparation is not enough. See ibid.[2] Florida’s lower *203 courts appear to have consistently applied this heightened standard. See, e. g., Richardson v. State, 922 So. 2d 331, 334 (App. 2006); Davis v. State, 741 So. 2d 1213, 1214 (App. 1999).
The pivotal question, then, is whether overt conduct directed toward unlawfully entering or remaining in a dwelling, with the intent to commit a felony therein, is “conduct that presents a serious potential risk of physical injury to another.” 18 U. S. C. § 924(e)(2)(B)(ii).
B
In answering this question, we look to the statutory language for guidance. The specific offenses enumerated in clause (ii) provide one baseline from which to measure whether other similar conduct “otherwise ... presents a serious potential risk of physical injury.” In this case, we can ask whether the risk posed by attempted burglary is comparable to that posed by its closest analog among the enumerated offenses — here, completed burglary. See Taylor, supra, at 600, n. 9 (“The Government remains free to argue that any offense — including offenses similar to generic burglary — should count towards enhancement as one that ‘otherwise involves conduct that presents a serious potential risk of physical injury to another’ under § 924(e)(2)(B)(ii)”).
The main risk of burglary arises not from the simple physical act of wrongfully entering onto another’s property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party — whether an occupant, a police officer, or a bystander — who comes to investigate. That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.
Attempted burglary poses the same kind of risk. Interrupting an intruder at the doorstep while the would-be burglar is attempting a break-in creates a risk of violent *204 confrontation comparable to that posed by finding him inside the structure itself. As one court has explained:
“In all of these cases the risk of injury arises, not from the completion of the break-in, but rather from the possibility that some innocent party may appear on the scene while the break-in is occurring. This is just as likely to happen before the defendant succeeds in breaking in as after. Indeed, the possibility may be at its peak while the defendant is still outside trying to break in, as that is when he is likely to be making noise and exposed to the public view.. .. [T]here is a serious risk of confrontation while a perpetrator is attempting to enter the building.” United States v. Payne, 966 F. 2d 4, 8 (CA1 1992).
Indeed, the risk posed by an attempted burglary that can serve as the basis for an ACCA enhancement may be even greater than that posed by a typical completed burglary. All burglaries begin as attempted burglaries. But ACCA only concerns that subset of attempted burglaries where the offender has been apprehended, prosecuted, and convicted. This will typically occur when the attempt is thwarted by some outside intervenor — be it a property owner or law enforcement officer. Many completed burglaries do not involve such confrontations. But attempted burglaries often do; indeed, it is often just such outside intervention that prevents the attempt from ripening into completion.
Concluding that attempted burglary presents a risk that is comparable to the risk posed by the completed offense, every Court of Appeals that has construed an attempted burglary law similar in scope to Florida’s has held that the offense qualifies as a “violent felony” under clause (ii)’s residual provision.[3] The only cases holding to the contrary *205 involved attempt laws that could be satisfied by preparatory conduct that does not pose the same risk of violent confrontation and physical harm posed by an attempt to enter a structure illegally.[4] Given that Florida law, as interpreted *206 by that State’s highest court, requires an overt act directed toward the entry of a structure, we need not consider whether the more attenuated conduct encompassed by such laws presents a potential risk of serious injury under ACCA.
The United States Sentencing Commission has come to a similar conclusion with regard to the Sentencing Guidelines’ career offender enhancement, whose definition of a predicate “crime of violence” closely tracks ACCA’s definition of “violent felony.” See United States Sentencing Commission, Guidelines Manual §4B1.2(a)(2) (Nov. 2006) (USSG). The Commission has determined that “crime[s] of violence” for the purpose of the Guidelines enhancement “include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.” §4B1.2, comment., n. 1. This judgment was based on the Commission’s review of empirical sentencing data and presumably reflects an assessment that attempt crimes often pose a similar risk of injury as completed offenses. As then-Chief Judge Breyer explained, “[t]he Commission, which collects detailed sentencing data on virtually every federal criminal case, is better able than any individual court to make an informed judgment about the relation between” a particular offense and “the likelihood of accompanying violence.” United States v. Doe, 960 F. 2d 221, 225 (CA1 1992); see also USSG §1A3 (Nov. 1987), re *207 printed in § 1 A1.1 comment. (Nov. 2006) (describing empirical basis of Commission’s formulation of Guidelines); United States v. Chambers, 478 F. 3d 724 (CA7 2007) (noting the usefulness of empirical analysis from the Commission in determining whether an unenumerated crime poses a risk of violence). While we are not bound by the Sentencing Commission’s conclusion, we view it as further evidence that a crime like attempted burglary poses a risk of violence similar to that presented by the completed offense.
C
James responds that it is not enough that attempted burglary “ ‘generally’ ” or in “ ‘most cases’ ” will create a risk of physical injury to others. Brief for Petitioner 32. Citing the categorical approach we employed in Taylor, he argues that we cannot treat attempted burglary as an ACCA predicate offense unless all cases present such a risk. James’ approach is supported by neither the statute’s text nor this Court’s holding in Taylor.
One could, of course, imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone — for example, a break-in of an unoccupied structure located far off the beaten path and away from any potential intervenors. But ACCA does not require metaphysical certainty. Rather, § 924(e)(2)(B)(ii)’s residual provision speaks in terms of a “potential risk.” These are inherently probabilistic concepts.[5] Indeed, the combination of the two terms suggests that Congress intended to encompass possibilities even more contingent or remote than a sim *208 pie “risk,” much less a certainty. While there may be some attempted burglaries that do not present a serious potential risk of physical injury to another, the same is true of completed burglaries — which are explicitly covered by the statutory language and provide a baseline against which to measure the degree of risk that a nonenumerated offense must “otherwise” present in order to qualify.
James’ argument also misapprehends Taylor's categorical approach. We do not view that approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. Cf. Gonzales v. Duenas-Alvarez, 549 U. S. 183, 193 (2007) (“[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute’s language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime”).
Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury — for example, an attempted murder where the gun, unbeknownst to the shooter, had no bullets, see United States v. Thomas, 361 F. 3d 653, 659 (CADC 2004). Or, to take an example from the offenses specifically enumerated in § 924(e)(2)(B)(ii), one could imagine an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments. In both cases, the risk of physical injury to another approaches zero. But that does not mean that the offenses of attempted murder or extortion are categorically nonviolent.
*209 As long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)’s residual provision. Attempted burglary under Florida law — as construed in Jones to require an overt act directed toward entry of a structure — satisfies this test.
D
Justice Scalia’s dissent criticizes our approach on the ground that it does not provide sufficient guidance for lower courts required to decide whether unenumerated offenses other than attempted burglary qualify as violent felonies under ACCA. But the dissent’s alternative approach has more serious disadvantages. Among other things, that approach unnecessarily decides an important question that the parties have not briefed (the meaning of the term “extortion” in § 924(e)(2)(B)(ii)), decides that question in a way that is hardly free from doubt, and fails to provide an interpretation of the residual provision that furnishes clear guidance for future cases.
The dissent interprets the residual provision to require at least as much risk as the least dangerous enumerated offense. But the ordinary meaning of the language of the residual clause does not impose such a requirement. What the clause demands is “a serious potential risk of physical injury to another.” While it may be reasonable to infer that the risks presented by the enumerated offenses involve a risk of this magnitude, it does not follow that an offense that presents a lesser risk necessarily fails to qualify. . Nothing in the language of § 924(e)(2)(B)(ii) rules out the possibility that an offense may present “a serious risk of physical injury to another” without presenting as great a risk as any of the enumerated offenses.
Moreover, even if an unenumerated offense could not qualify without presenting at least as much risk as the least risky *210 of the enumerated offenses, it would not be necessary to identify the least risky of those offenses in order to decide this case. Rather, it would be sufficient to establish simply that the unenumerated offense presented at least as much risk as one of the enumerated offenses. Thus, Justice Scalia’s interpretation of the meaning of the term “extortion” is unnecessary — and inadvisable. The parties have not briefed this issue, and the proposed interpretation is hardly beyond question. Instead of interpreting the meaning of the term “extortion” in accordance with its meaning at common law or in modern federal and state statutes, see Taylor, 495 U. S., at 598, it is suggested that we adopt an interpretation that seems to be entirely novel and that greatly reduces the reach of ACCA.
The stated reason for tackling this question is to provide guidance for the lower courts in future cases — surely a worthy objective. But in practical terms, the proposed interpretation of the residual clause would not make it much easier for the lower courts to decide whether other unenumerated offenses qualify. Without hard statistics— and no such statistics have been called to our attention— how is a lower court to determine whether the risk posed by generic burglary is greater or less than the risk posed by an entirely unrelated unenumerated offense — say, escape from prison?[6]
*211 In the end, Justice Scalia’s analysis of this case turns on the same question as ours — i. e., the comparative risks presented by burglary and attempted burglary. The risk of physical injury in both cases occurs when there is a confrontation between the criminal and another person, whether an occupant of the structure, a law enforcement officer or security guard, or someone else. It is argued that when such an encounter occurs during a consummated burglary (i. e., after entry), the risk is greater than it is when the encounter occurs during an attempted burglary (i. e., before entry is effected), and that may be true. But this argument fails to come to grips with the fact that such encounters may occur much more frequently during attempted burglaries because it is precisely due to such encounters that many planned burglaries do not progress beyond the attempt stage. Justice Scalia dismisses the danger involved when encounters occur during attempted burglaries, stating that such encounters are “likely to consist of nothing more than the occupant’s yelling Who’s there?’ from his window, and the burglar’s running away.” Post, at 226. But there are many other possible scenarios. An armed would-be burglar may be spotted by a police officer, a private security guard, or a participant in a neighborhood watch program. Or a homeowner angered by the sort of conduct recited in James’ presentence report — throwing a hammer through a window — may give chase, and a violent encounter may ensue. For these rea *212 sons and the reasons discussed above, we are convinced that the offense of attempted burglary, as defined by Florida law, qualifies under ACCA’s residual clause.
IV
Although the question on which this Court granted certiorari focused on the attempt prong of Florida’s attempted burglary law, James also argues that the scope of the State’s underlying burglary statute itself precludes treating attempted burglary as a violent felony for ACCA purposes. Specifically, he argues that Florida’s burglary statute differs from “generic” burglary as defined in Taylor, supra, at 598, because it defines a “‘[djwelling’” to include not only the structure itself, but also the “curtilage thereof,”[7] Fla. Stat. §810.011(2).
We agree that the inclusion of curtilage takes Florida’s underlying offense of burglary outside the definition of “generic burglary” set forth in Taylor, which requires an unlawful entry into, or remaining in, “a building or other structure” 495 U. S., at 598 (emphasis added). But that conclusion is not dispositive, because the Government does not argue that James’ conviction for attempted burglary constitutes “burglary” under § 924(e)(2)(B)(ii). Rather, it relies on the residual provision of that clause, which — as the Court has recognized — can cover conduct that is outside the strict definition of, but nevertheless similar to, generic burglary. Id., at 600, n. 9.
Is the risk posed by an attempted entry of the curtilage comparable to that posed by the attempted entry of a structure (which, as we concluded above, is sufficient to qualify *213 under the residual provision)? We must again turn to state law in order to answer this question.
The Florida Supreme Court has construed curtilage narrowly, requiring “some form of an enclosure in order for the area surrounding a residence to be considered part of the ‘curtilage’ as referred to in the burglary statute.” State v. Hamilton, 660 So. 2d 1038, 1044 (1995) (holding that a yard surrounded by trees was not “curtilage”); see also United States v. Matthews, 466 F. 3d 1271, 1274 (CA11 2006) (“Florida case law construes curtilage narrowly, to include only an enclosed area surrounding a structure”). Given this narrow definition, we do not believe that the inclusion of curtilage so mitigates the risk presented by attempted burglary as to take the offense outside the scope of clause (ii)’s residual provision.
A typical reason for enclosing the curtilage adjacent to a structure is to keep out unwanted visitors — especially those with criminal motives. And a burglar who illegally attempts to enter the enclosed area surrounding a dwelling creates much the same risk of physical confrontation with a property owner, law enforcement official, or other third party as does one who attempts to enter the structure itself. In light of Florida’s narrow definition of curtilage, attempted burglary of the curtilage requires both physical proximity to the structure and an overt act directed toward breaching the enclosure. Such an attempt “presents a serious potential risk that violence will ensue and someone will be injured.” Id., at 1275 (holding that burglary of the curtilage is a violent felony under ACCA’s residual provision).
V
Finally, James argues that construing attempted burglary as a violent felony raises Sixth Amendment issues under Apprendi v. New Jersey, 530 U. S. 466 (2000), and its progeny because it is based on “judicial fact finding” about the risk presented by “the acts that underlie ‘most’ convictions for *214 attempted burglary.” Brief for Petitioner 34, 35. This argument is without merit.
In determining whether attempted burglary under Florida law qualifies as a violent felony under § 924(e)(2)(B)(ii), the Court is engaging in statutory interpretation, not judicial factfinding. Indeed, by applying Taylor’s categorical approach, we have avoided any inquiry into the underlying facts of James’ particular offense, and have looked solely to the elements of attempted burglary as defined by Florida law. Such analysis raises no Sixth Amendment issue.[8]
* * *
For these reasons, the judgment of the Court of Appeals for the Eleventh Circuit is affirmed.

It is so ordered.

 James’ two other prior convictions — for possession of cocaine and trafficking in cocaine — were determined to be "serious drug offense[s]” under ACCA, see 18 U. S. C. § 924(e)(1) (2000 ed., Supp. IV), and are not at issue here.

 The Jones court distinguished its earlier holding in Thomas v. State, 531 So. 2d 708 (1988). There, the State Supreme Court upheld a conviction under a state statute criminalizing the possession of burglary tools, Fla. Stat. §810.06, where the defendant had been arrested after jumping a fence and trying to run away from police while carrying a screwdriver. Jones held that “the overt act necessary to convict of the burglary tool crime is not the same as the overt act required to prove attempted burglary,” and noted that the conduct charged in Thomas would not be sufficient to prove attempted burglary because the defendant in that case com *203 mitted no overt act directed toward entering or remaining in a building. 608 So. 2d, at 799.

 See United States v. Lane, 909 F. 2d 895, 903 (CA6 1990) (construing Ohio attempted burglary law: “ ‘The fact that an offender enters a building to commit a crime often creates the possibility, of a violent confrontation between the offender and an occupant, caretaker, or some other person *205 who comes to investigate.’. . . The fact that [the defendant] did not complete the burglary offense does not diminish the serious potential risk of injury to another arising from an attempted burglary”); United States v. Fish, 928 F. 2d 185, 188 (CA6 1991) (Michigan attempted burglary law); United States v. Payne, 966 F. 2d 4, 8 (CA1 1992) (Massachusetts attempted-breaking-and-entering law); United States v. O’Brien, 972 F. 2d 47, 52 (CA3 1992) (Massachusetts attempted-breaking-and-entering law: “[T]he possibility of a violent confrontation with an innocent party is always present when a perpetrator attempts to enter a building illegally, even when the crime is not actually completed”); United States v. Solomon, 998 F. 2d 587, 590 (CA8 1993) (Minnesota attempted burglary law); United States v. Custis, 988 F. 2d 1355, 1364 (CA4 1993) (Maryland attempted-breaking-and-entering law: “In most cases, attempted breaking and entering will be charged when a defendant has been interrupted in the course of illegally entering a home. Interrupting an intruder while breaking into a home involves a risk of confrontation nearly as great as finding him inside the house”); United States v. Thomas, 2 F. 3d 79, 80 (CA4 1993) (New Jersey attempted burglary law); United States v. Andrello, 9 F. 3d 247, 249-250 (CA2 1993) (per curiam) (New York attempted burglary law); United States v. Davis, 16 F. 3d 212, 218 (CA7 1994) (Illinois attempted burglary law); United States v. Bureau, 52 F. 3d 584, 593 (CA6 1995) (Tennessee attempted burglary law: “[T]he propensity for a violent confrontation and the serious potential risk of injury inherent in burglary is not diminished where the burglar is not successful in completing the crime. The potential risk of injury is especially great where the burglar succeeds in entry or near-entry despite not fully completing the crime”); United States v. Demint, 74 F. 3d 876, 878 (CA8 1996) (per curiam) (Florida attempted burglary law); United States v. Collins, 150 F. 3d 668, 671 (CA7 1998) (Wisconsin attempted burglary law: “We have already recognized the inherently dangerous situation and possibility of confrontation that is created when a burglar attempts to illegally enter a building or residence. .. . Wisconsin’s requirement that a defendant must attempt to enter a building before he can be found guilty of attempted burglary is sufficient to mandate that attempted burglary in Wisconsin constitutes a violent felony”).

 In United States v. Strahl, 958 F. 2d 980, 986 (1992), the Tenth Circuit held that attempted burglary under Utah law did not qualify as an ACCA predicate offense because a conviction could be “based upon conduct such *206 as making a duplicate key, ‘easing’ the targeted building, obtaining floor plans of a structure, or possessing burglary tools.” United States v. Permenter, 969 F. 2d 911, 913 (CA10 1992), similarly excluded a conviction under an Oklahoma statute that could be satisfied by the defendant’s “merely ‘easing’ the targeted structure.” In United States v. Martinez, 954 F. 2d 1050,1054 (1992), the Fifth Circuit came to the same conclusion as to a Texas attempted burglary statute that did not require that the defendant be “in the vicinity of any building.” And in United States v. Weekley, 24 F. 3d 1125, 1127 (CA9 1994), the Court of Appeals concluded that ACCA was not satisfied by a conviction under a Washington law that covered “relatively unrisky” conduct such as casing the neighborhood, selecting a house to burgle, and possessing neckties to be used in the burglary.

 See, e. g., Black’s Law Dictionary 1188 (7th ed. 1999) (potential: “[c]apable of coming into being; possible”); id., at 1328 (risk: “[t]he chance of injury, damage, or loss; danger or hazard”); Webster’s Third New International Dictionary 1775 (1971) (potential: “existing in possibility: having the capacity or a strong possibility for development into a state of actuality”); id., at 1961 (risk: “the possibility of loss, injury, disadvantage, or destruction”).

 While ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses, we are not persuaded by Justice Scalia’s suggestion — which was not pressed by James or his amici — that the residual provision is unconstitutionally vague. See post, at 230. The statutory requirement that an unenumerated crime “otherwise involv[e] conduct that presents a serious potential risk of physical injury to another” is not so indefinite as to prevent an ordinary person from understanding what conduct it prohibits. See Kolender v. Lawson, 461 U. S. 352,357 (1983). Similar formulations have been used in other federal and state criminal statutes. See, e.g., 18 U. S. C. § 2332b(a)(1)(B) (defining “terrorist act” as conduct that, among other things, “creates a substantial *211 risk of serious bodily injury to any other person”); Ariz. Rev. Stat. Ann. § 13-2508(A)(2) (West 2001) (offense of resisting arrest requires preventing an officer from effectuating an arrest by “any . .. means creating a substantial risk of causing physical injury to the peace officer or another”); Cal. Health & Safety Code Ann. § 42400.3(b) (West 2006) (criminalizing air pollution that “results in any unreasonable risk of great bodily injury to, or death of, any person”); N. Y. Penal Law Ann. §490.47 (West Supp. 2007) (“[c]riminal use of a chemical weapon or biological weapon” requires “a grave risk of death or serious physical injury to another person not a participant in the crime”).

 Burglary under Florida law differs from “generic” burglary in a second respect: It extends not just to entries of structures, but also of “conveyance[s].” Fla. Stat. §810.02(1). But because James (in accordance with what appears to be the general practice in Florida) was specifically charged with and convicted of “attempted burglary of a dwelling," we need not examine this point further.

 To the extent that James contends that the simple fact of his prior conviction was required to be found by a jury, his position is baseless. James admitted the fact of his prior conviction in his guilty plea, and in any case, we have held that prior convictions need not be treated as an element of the offense for Sixth Amendment purposes. Almendarez-Torres v. United States, 523 U. S. 224 (1998).