Justice Scalia,
concurring in the judgment.
The statute in this case defines “violent felony” in part as “any crime punishable by imprisonment for a term exceeding one year ... that... is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” 18 U. S. C. § 924(e)(2)(B)(ii). Contrary to the Court, I conclude that the residual clause unambiguously encompasses all crimes that present a serious risk of injury to another. But because I cannot say that drunk driving clearly poses such a risk (within the meaning of the statute), the rule of lenity brings me to concur in the judgment of the Court.
I
Last Term, in James v. United States, 550 U. S. 192 (2007), the Court held that attempted burglary qualifies as a violent felony under § 924(e). It concluded that to determine whether a predicate crime falls under the residual clause, a court should first identify the enumerated crime to which the predicate crime is most closely analogous and then decide *149 whether the risk posed by the predicate crime is roughly equivalent to the risk posed by the enumerated crime. Because burglary was the enumerated crime most closely analogous to attempted burglary, and attempted burglary in the Court’s judgment posed roughly the same risk of physical injury as burglary, attempted burglary qualified as a “violent felony” under § 924(e). See id., at 209.
Unfortunately, the Court’s approach in deciding that case provided no guidance for deciding future cases that involve predicate crimes other than attempted burglary, particularly those for which there are no clear analogs among the enumerated crimes. Pointing out that problem in dissent, I anticipated this very case: “Is, for example, driving under the influence of alcohol more analogous to burglary, arson, extortion, or a crime involving use of explosives?” Id., at 215.
My dissent set out a different approach to the statute. In my view, the best way to interpret § 924(e) is first to determine which of the enumerated offenses poses the least serious risk of physical injury, and then to set that level of risk as the “serious potential risk” required by the statute. Crimes that pose at least that serious a risk of injury are encompassed by the residual clause; crimes that do not are excluded. In my judgment, burglary was the least risky crime among the enumerated offenses, and I therefore concluded that attempted burglary, which is less risky than burglary, is not covered by the residual clause.
The Court held otherwise in James, and since this is a statutory case that holding has a strong claim to stare decisis. But the concomitant of the sad fact that the theory of James has very limited application is the happy fact that its stare decisis effect is very limited as well. It must be followed, I presume, for unenumerated crimes that are analogous to enumerated crimes (e. g., attempted arson). It provides no answer, and suggests no approach to an answer, where, as here, the predicate crime has no analog among *150 the enumerated crimes. For such cases I would therefore adhere to the principles I set forth in my James dissent.
II
Today the Court devises a different way to give concrete meaning to the residual clause. Confronted with a predicate crime that has no obvious analog among the enumerated offenses, the Court engrafts a requirement onto the residual clause that a predicate crime involve “purposeful, ‘violent/ and ‘aggressive’ conduct.” Ante, at 144-145. By doing so, it excludes a slew of crimes from the scope of the residual clause, including (not by happenstance) the crime at issue here, drunk driving. Like James, this latest made-for-the-case improvisation does not (as my resolution does) provide a complete framework that will embrace all future cases. There are still many crimes that are not analogous to the enumerated crimes (so that their status cannot be resolved by James) but do involve “purposeful, ‘violent/ and ‘aggressive’ conduct” (so that their status cannot be resolved by today’s deus ex machina). Presumably some third (and perhaps fourth and fifth) gimmick will be devised to resolve those cases ás they arise, leaving our brethren on the district courts and courts of appeals much room for enjoyable speculation.
But quite apart from its regrettable continuation of a piecemeal, suspenseful, Scrabble-like approach to the interpretation of this statute, the problem with the Court’s holding today is that it is not remotely faithful to the statute that Congress wrote. There is simply no basis (other than the necessity of resolving the present case) for holding that the enumerated and unenumerated crimes must be similar in respects other than the degree of risk that they pose.
The Court is correct that the clause “otherwise involves conduct that presents a serious potential risk of physical injury to another” signifies a similarity between the enumerated and unenumerated crimes. It is not, however, any old *151 similarity, such as (to take a random example) “purposeful, ‘violent,’ and ‘aggressive’ conduct.” Rather, it is the particular similarity specified after the “otherwise” — i. e., that they all pose a serious potential risk of physical injury to another. They need not be similar in any other way. As the Court correctly notes, the word “otherwise” in this context means “ ‘in a different way or manner.’ ” Ante, at 144; see also James, 550 U. S., at 218 (Scalia, J., dissenting); Webster’s New International Dictionary 1729 (2d ed. 1957) (“in another way, or in other ways”). Therefore, by using the word “otherwise” the writer draws a substantive connection between two sets only on one specific dimension — i. e., whatever follows “otherwise.” What that means here is that “committing one of the enumerated crimes ... is one way to commit a crime ‘involving] a serious potential risk of physical injury to another’; and that other ways of committing a crime of that character similarly constitute ‘violent felon[ies].’” James, supra, at 218 (Scalia, J., dissenting).
The Court rejects this seemingly straightforward statutory analysis, reading the residual clause to mean that the unenumerated offenses must be similar to the enumerated offenses not only in the degree of risk they pose, but also “in kind,” despite the fact that “otherwise” means that the common element of risk must be presented “ ‘in a different way or manner.’ ” Ante, at 143,144 (emphasis added). The Court’s explanation for this interpretation seems to be that the enumerated crimes are “so far from clear in respect to the degree of risk each poses that it is difficult to accept clarification in respect to degree of risk as Congress’ only reason for including them.” Ante, at 143. While I certainly agree that the degree of risk associated with the enumerated crimes is unclear, I find it unthinkable that the solution to that problem is to write a different statute. The phrase “otherwise involves conduct that presents a serious potential risk of physical injury to another” limits inclusion in the statute only by a crime’s degree of risk. See James, *152 supra, at 218 (Scalia, J., dissenting). The use of the adjective “serious” seems to me to signify a purely quantitative measure of risk. If both an intentional and a negligent crime pose a 50% risk of death, could one be characterized as involving a “serious risk” and the other not? Surely not.
The Court supports its argument with that ever-ready refuge from the hardships of statutory text, the (judicially) perceived statutory purpose. According to the Court, because the Armed Career Criminal Act is concerned with “the special danger created when a particular type of offender — a violent criminal or drug trafficker — possesses a gun,” the statutory purpose favors applying §924(e)’s enhanced penalty only to those criminals “who might deliberately point the gun and pull the trigger.” Ante, at 146. I cannot possibly infer that purpose from the statute. For all I know, the statute was meant to punish those who are indifferent to human life, or who are undeterred by the criminal penalties attached to the commission of other crimes (after all, the statute enhances penalties for drug traffickers, see § 924(e)(2)(A)). While the Court’s asserted purpose would surely be a reasonable one, it has no more grounding in the statutory text than do these other possibilities. And what is more, the Court’s posited purpose is positively contradicted by the fact that one of the enumerated crimes— the unlawful use of explosives — may involve merely negligent or reckless conduct. See ALI, Model Penal Code § 220.2(2) (1985) (“A person is guilty of a misdemeanor if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means”); id., §220.3 (“A person is guilty of criminal mischief if he . . . damages tangible property of another purposely, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means”).
The Court says that an interpretation of the residual clause that includes all crimes posing a serious risk of injury would render superfluous § 924(e)(2)(B)(i), which provides *153 that a “violent felony” is any crime that “has as an element the use, attempted use, or threatened use of physical force against the person” of another. Ante, at 142 (internal quotation marks omitted). But the canon against surplusage has substantially less force when it comes to interpreting a broad residual clause like the one at issue here. Though the second clause renders the first superfluous, it would raise no eyebrows to refer to “crimes that entail the use of force and crimes that, while not entailing the use of force, nonetheless present a serious risk of injury to another person.” In any event, the canon against surplusage merely helps decide between competing permissible interpretations of an ambiguous statute; it does not sanction writing in a requirement that Congress neglected to think of. And finally, come to think of it, the Court’s solution does nothing whatever to solve the supposed surplusage problem. Crimes that include as an element “the use ... of physical force against the person of another” are all embraced (and the. reference to them thus rendered superfluous) by the requirement of “purposeful, ‘violent,’ and ‘aggressive’ conduct” that the Court invents.
Ill
Under my interpretation of § 924(e), I must answer one question: Does drunk driving pose at least as serious a risk of physical injury to another as burglary? From the evidence presented by the Government, I cannot conclude so. Because of that, the rule of lenity requires that I resolve this case in favor of the defendant.
The Government cites the fact that in 2006,17,062 persons died from alcohol-related car crashes, and that 15,121 of those deaths involved drivers with blood-alcohol concentrations of 0.08 or higher. See Brief for United States 17. Drunk driving is surely a national problem of great concern. But the fact that it kills many people each year tells us very little about whether a single act of drunk driving “involves conduct that presents a serious potential risk of physical in *154 jury to another.” It may well be that an even greater number of deaths occurs annually to pedestrians crossing the street; but that hardly means that crossing the street presents a serious potential risk of injury. Where the issue is “risk,” the annual number of injuries from an activity must be compared with the annual incidents of the activity. Otherwise drunk driving could be said to pose a more serious risk of physical harm than murder. In addition, drunk driving is a combination of two activities: (1) drinking and (2) driving. If driving alone results in injury in a certain percentage of cases, it could hardly be said that the entirety of the risk posed by drunk driving can be attributed to the combination. And finally, injuries to the drunk drivers themselves must be excluded from the calculus, because the statute counts only injuries to other persons.
Needless to say, we do not have these relevant statistics. And even if we did, we would still need to know similar statistics for burglary, which are probably even harder to come by. This does not mean that I will never be able to identify a crime that falls under the residual clause. For some crimes, the severity of the risk will be obvious. Crimes like negligent homicide, see ALI, Model Penal Code §210.4 (1980), conspiracy to commit a violent crime, id., § 5.03 (1985), inciting to riot, 18 U. S. C. §2101, and the production of chemical weapons, §229, certainly pose a more serious risk of physical injury to others than burglary. (By contrast, the Court’s approach eliminates from the residual clause all negligent crimes, even those that entail a 100% risk of physical injury such as negligent homicide.) But I can do no more than guess as to whether drunk driving poses a more serious risk than burglary, and I will not condemn a man to a minimum of 15 years in prison on the basis of such speculation. See Ladner v. United States, 358 U. S. 169, 178 (1958). Applying the rule of lenity to a statute that demands it, I would reverse the decision of the Court of Appeals.