*155 Justice Alito, with whom Justice Souter and Justice Thomas join,
dissenting.
The statutory provision at issue in this ease — the so-called “residual clause” of 18 U. S. C. § 924(e)(2)(B)(ii) — calls out for legislative clarification, and I am sympathetic to the result produced by the Court’s attempt to craft a narrowing construction of this provision. Unfortunately, the Court’s interpretation simply cannot be reconciled with the statutory text, and I therefore respectfully dissent.
In September 2004, after a night of heavy drinking, petitioner pointed a rifle at his aunt and threatened to shoot if she did not give him money. When she replied that she did not have any money, petitioner repeatedly pulled the trigger, but the rifle was unloaded and did not fire. Petitioner then threatened his sister in a similar fashion.
At the time of this incident, petitioner was a convicted felon. He had 12 prior convictions in New Mexico for driving under the influence of alcohol (DUI). While DUI is generally a misdemeanor under New Mexico law, the offense of DUI after at least three prior DUI convictions is a felony requiring a sentence of 18 months’ imprisonment. N. M. Stat. Ann. §66-8-102(G) (Supp. 2007).
Petitioner pleaded guilty to possession of a firearm by a convicted felon, in violation of 18 U. S. C. § 922(g)(1). A violation of that provision generally carries a maximum term of imprisonment of 10 years, see § 924(a)(2), but the District Court and the Court of Appeals held that petitioner was subject to a mandatory minimum sentence of 15 years because he had at least three prior convictions for the New Mexico felony of DUI after being convicted of DUI on at least three prior occasions. 377 F. Supp. 2d 1141,1143-1145 (NM 2005); 470 F. 3d 964, 966-975, 977 (CA10 2006). The lower courts concluded that these offenses were crimes “punishable by imprisonment for a term exceeding one year” and “involve[d] *156 conduct that presented] a serious potential risk of physical injury to another.” 18 U. S. C. § 924(e)(2)(B).
The Court does not hold that the maximum term of imprisonment that petitioner faced on his felony DUI convictions was less than one year.[1] Nor does the Court dispute that petitioner’s offenses involved a “potential risk of physical injury to another.” Ibid. The only remaining question, therefore, is whether the risk presented by petitioner’s qualifying DUI felony convictions was “serious,” i. e., “significant” or “important.” See, e. g., Webster’s Third New International Dictionary 2073 (2002) (hereinafter Webster’s); 15 Oxford English Dictionary 15 (def. 6(a)) (2d ed. 1989) (hereinafter OED). In my view, it was.
Statistics dramatically show that driving under the influence of alcohol is very dangerous. Each year, approximately 15,000 fatal alcohol-related crashes occur, accounting for roughly 40% of all fatal crashes.[2] Approximately a quarter million people are injured annually in alcohol-related *157 crashes.[3] The number of people who are killed each year by drunk drivers is far greater than the number of murders committed during any of the crimes specifically set out in the statutory provision at issue here, § 924(e)(2)(B)(ii) — burglary, arson, extortion, and offenses involving the use of explosives.[4]
Petitioner’s qualifying offenses, moreover, fell within the statute only because he had been convicted of DUI on at least three prior occasions. As noted, petitioner had a dozen prior DUI convictions. Persons who repeatedly drive drunk present a greatly enhanced danger that they and others will be injured as a result.[5] In addition, it has been *158 estimated that the ratio of DUI incidents to DUI arrests is between 250 to 1 and 2,000 to l.[6] Accordingly, the risk presented by a 10th, 11th, and 12th DUI conviction may be viewed as the risk created by literally thousands of drunk-driving events. That risk was surely “serious,” and therefore petitioner’s offenses fell squarely within the language of the statute.
Moreover, taking the statutory language to mean what it says would not sweep in all DUI convictions. Most DUI convictions are not punishable by a term of imprisonment of more than one year and thus fall outside the scope of the statute.[7] Petitioner’s convictions qualified only because of his extraordinary — and, I would say, extraordinarily dangerous — record of drunk driving.
The Court holds that an offense does not fall within the residual clause unless it is “roughly similar, in kind as well as in degree of risked posed,” ante, at 143, to the crimes specifically listed in 18 U. S. C. § 924(e)(2)(B), i. e., burglary, extortion, arson, and crimes involving the use of explosives. These crimes, according to the Court, “all typically involve purposeful, ‘violent,’ and ‘aggressive’ conduct.” Ante, at 144-145 (quoting 470 F. 3d, at 980 (McConnell, J., dissenting)).
This interpretation cannot be squared with the text of the statute, which simply does not provide that an offense must be “purposeful,” “violent,” or “aggressive” in order to fall within the residual clause. Rather, after listing burglary, *159 arson, extortion, and explosives offenses, the statute provides (in the residual clause) that an offense qualifies if it “otherwise involves conduct that presents a serious potential risk of physical injury to another.” Therefore, offenses falling within the residual clause must be similar to the named offenses in one respect only: They must “otherwise” — which is to say, “in a different manner,” 10 OED 984 (def. B(l)); see also Webster’s 1598 — “involv[e] conduct that presents a serious potential risk of physical injury to another.” Requiring that an offense must also be “purposeful,” “violent,” or “aggressive” amounts to adding new elements to the statute, but we “ordinarily resist reading words or elements into a statute that do not appear on its face.” Bates v. United States, 522 U. S. 23, 29 (1997).
Each part of this additional, judicially added requirement presents other problems as well.
Purposeful. At least one State’s DUI law requires proof of purposeful conduct. See Tam v. State, 232 Ga. App. 15, 15-16, 501 S. E. 2d 51, 52 (1998) (requiring proof of the intent to drive). In addition, many States recognize involuntary intoxication as a defense. See 4 R. Essen & R. Erwin, Defense of Drunk Driving Cases: Criminal — Civil § 44.04 (2007). And even in States that do not require purposefulness, I have no doubt that the overwhelming majority of DUI defendants purposefully drank before getting behind the wheel and were purposefully operating their vehicles at the time of apprehension. I suspect that many DUI statutes do not require proof of purposefulness because the element is almost always present, requiring proof of the element would introduce an unnecessary complication, and it would make no sense to preclude conviction of those defendants who were so drunk that they did not even realize that they were behind the wheel.
Violent. It is clear that 18 U. S. C. § 924(e)(2)(B) is not limited to “violent” crimes, for if it were, it would be redun *160 dant. The prior subparagraph, § 924(e)(2)(A), includes offenses that have as an element the use or threatened use of violence.
Aggressive. The concept of “aggressive” crimes is vague, and in any event, it is hardly apparent why DUI — not to mention the species of felony DUI recidivism that resulted in petitioner’s predicament — is not “aggressive.” Driving can certainly involve “aggressive” conduct. Indeed, some States have created the offense of “aggressive driving.” See M. Savage, M. Sundeen, & A. Teigen, Transportation Series, Traffic Safety and Public Health: State Legislative Action 2007, p. 17, and App. J (NCSL, No. 32, Dec. 2007), online at http.7/www.ncsl.org/print/transportation/ 07trafficsafety.pdf. Most States have a toll-free telephone number to call to report “aggressive” driving. See Campaign Safe & Sober, Phone Numbers for Reporting Impaired, Aggressive, or Unsafe Driving, online at http://www.nhtsa. dot.gov/people/outreach/safesobr/16qp/phone.html.
The Court defends its new statutory element on the ground that a defendant who merely engages in felony drunk driving is not likely to be “the kind of person who might deliberately point the gun and pull the trigger.” Ante, at 146. The Court cites no empirical support for this conclusion, and its accuracy is not self-evident. Petitioner’s pattern of behavior may or may not be typical of those defendants who have enough DUI convictions to qualify under N. M. Stat. Ann. §66-8-102(G) and 18 U. S. C. § 924(e)(2)(B), but the example of his behavior in this case — pointing a gun at his aunt’s head and repeatedly pulling the trigger — should surely be enough to counsel against uncritical rebaneé on stereotypes about “the type” of people who commit felony DUI violations.
Defendants who qualify for an enhanced sentence under § 924(e) (2000 ed. and Supp. V) based (in whole or in part) on felony DUI convictions share at least three characteristics that are relevant for present purposes. First, they are per *161 sons who, in the judgment of Congress, cannot be trusted to use a firearm responsibly. In order to qualify for an enhanced sentence under § 924(e), a defendant must of course be convicted of violating the felon-in-possession statute, § 922(g) (2000 ed.). The felon-in-possession statute necessarily rests on the judgment that a person with a prior felony conviction cannot be trusted with a firearm. See Caron v. United States, 524 U. S. 308, 315 (1998) (“Congress meant to keep guns away from all offenders who, the Federal Government feared, might cause harm . . . ”). And there is no dispute that a prior felony DUI conviction qualifies as a felony under the felon-in-possession law. If Congress thought that a person with a prior felony DUI conviction is not “the kind of person” who is likely to use a gun unlawfully, why would Congress have made it a crime for such a person to possess a gun?
Second, defendants with DUI convictions that are counted under 18 U. S. C. § 924(e)(2)(B) are likely to have serious alcohol abuse problems. As previously mentioned, ordinary DUI convictions are generally not counted under § 924(e) because they are not punishable by imprisonment for more than a year. Such penalties are generally reserved for persons, like petitioner, with a record of repeated DUI violations. See NCSL, supra. Such individuals are very likely to have serious alcohol abuse problems and a propensity to engage in irresponsible conduct while under the influence. Alcohol use often precedes violent crimes, see, e. g., Roizen, Epidemiological Issues in Alcohol-Related Violence, in 13 Recent Developments in Alcoholism 7, 8-9 (M. Galanter ed. 1997), and thus there is reason to worry about the misuse of firearms by defendants whose alcohol abuse problems are serious enough to result in felony DUI convictions.
Third, defendants with DUI convictions that are counted under § 924(e)(2)(B) have either (1) such serious alcohol abuse problems that they have at least three prior felony DUI convictions or (2) both one or two felony DUI convictions and *162 one or two offenses that fall under § 924(e)(2)(B)(i) (offenses that have “as an element the use, attempted use, or threatened use of physical force”) or that are specifically set out in § 924(e)(2)(B)(ii) (burglary, arson, extortion, or an explosives offense). Defendants with three felony DUI convictions are likely to be super-DUI-recidivists like petitioner. Defendants with a combination of felony DUI and other qualifying convictions — for example, convictions for assault or burglary — are persons who, even by the Court’s lights, could be classified as “the kind of person who might deliberately point [a] gun and pull the trigger.”
Unlike the Court, I cannot say that persons with these characteristics are less likely to use a gun illegally than are persons convicted of other qualifying felonies.
Justice Scalia’s concurrence takes a different approach, but his analysis is likewise flawed. Justice Scalia would hold (1) that an offense does not fall within the residual clause unless it presents a risk that is at least as great as that presented by the least dangerous of the enumerated offenses; (2) that burglary is the least dangerous of the enumerated offenses; (3) that the relevant measure of risk is the risk that the typical burglary, DUI, etc., would result in injury; and (4) that the risk presented by an incident of DUI is less than the risk presented by a burglary.
Justice Scalia, like the Court, does not follow the statutory language. The statute says that offenses falling within the residual clause must present “a serious potential risk of physical injury to another.” The statute does not say that these offenses must present at least as much risk as the enumerated offenses.
The statute also does not say, as Justice Scalia would hold, that the relevant risk is the risk that each incident of DUI will result in injury. I see no basis for concluding that Congress was not also concerned with the risk faced by potential victims, particularly since the statute explicitly refers to “potential risk.” Drunk driving is regarded as a severe *163 societal problem in large meásure because of the very large number of victims it produces each year.
Finally, Justice Scalia’s conclusion that burglary is the least risky of the enumerated offenses is based on a proerustean reading of § 924(e)(2)(B)(ii). This provision refers, without qualification, to “extortion.” In his dissent in James v. United States, 550 U. S. 192 (2007), Justice Scalia concluded that many forms of extortion are “inherently unlikely to cause physical harm.” Id., at 223 (emphasis in original). Only by finding that the term “extortion” in § 924(e)(2)(B)(ii) really means only certain forms of extortion was Justice Scalia able to come to the conclusion that burglary is the least risky of the enumerated offenses.
For all these reasons, I would affirm the decision of the Tenth Circuit.

 United States v. Rodriquez, now pending before the Court, presents the question “[w]hether a state drug-trafficking offense, for which state law authorized a ten-year sentence because the defendant was a recidivist, qualifies as a predicate offense under the Armed Career Criminal Act, 18 U. S. C. § 924(e).” Pet. for Cert., O. T. 2007, No. 06-1646, p. I. [Reporter’s Note: See post, p. 377.]

 See National Highway Traffic Safety Administration (NHTSA), Traffic Safety Facts Annual Report, p. 56 (Table 34) (2006) (15,945 alcohol-related fatal crashes; 41%), (2005) (15,238; 39%), (2004) (14,968; 39%), (2003) (15,251; 40%), (2002) (15,626; 41%), (2001) (15,585; 41%), (2000) (14,847; 40%), (1999) (14,109; 38%), (1998) (14,278; 39%), (1997) (14,363; 38.5%), (1996) (15,249; 40.8%), online at http://www-nrd.nhtsa.dot.gov/CATS/ listpublications.aspx?Id=E&ShowBy=DocType (Annual Reports 1994-2006 hyperlink) (all Internet materials as visited Apr. 11, 2008, and available in Clerk of Court’s case file); see also Michigan Dept. of State Police v. Sitz, 496 U. S. 444, 451 (1990) (“No one can seriously dispute the magnitude of the drunken driving problem____ ‘Drunk drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries . . . ’ ” (footnote omitted)); South Dakota v. Neville, 459 U. S. 553, 558 (1983) (“The carnage caused by drunk drivers is well documented .... This Court... has repeatedly lamented the tragedy”).

 See NHTSA, supra, at 111 (Table 76) (2006) (278,000), (2005) (254,000), (2004) (248,000), (2003) (275,000), (2002) (258,000), (2001) (275,000), (2000) (310.000) , (1999) (308,000), (1998) (305,000), (1997) (327,000), (1996) (321.000) .

 According to statistics compiled by the Federal Bureau of Investigation, between 1996 and 2006 total annual murders never exceeded 15,000 after 1997. During that same 11-year period, the highest number of murders committed in the course of burglary was 123, the number of murders committed in the course of arson peaked at 105, and the number of murders involving explosives topped out at 14 — all in 1996. See Dept, of Justice, Federal Bureau of Investigation, Uniform Crime Reports/Crime in the United States (Annual Reports 1996-2006), online at http://www. fbi.gov/uer/ucr.htm#cius. While murders committed in the course of extortion were not separately reported, common sense and the fact that the total number of murders was similar to the number of fatal alcohol-related crashes at least after 1997 indicates that murders involving extortion would not rival deaths in alcohol-related auto accidents. Even if one were to expand beyond murders to all fatalities and even injuries, it is estimated that arson causes the relatively small number of 475 deaths and over 2,000 injuries annually. Dept, of Homeland Security, U. S. Fire Administration, Arson in the United States, Vol. 1 Topical Fire Research Series, No. 8 (Jan. 2001, rev. Dec. 2001), online at http://www.usfa.dhs.gov/downloads/ pdf/tfrs/vli8-508.pdf.

 See United States v. McCall, 439 F. 3d 967, 972 (CA8 2006) (en banc) (citing Brewer et al., The Risk of Dying in Alcohol-Related Automobile Crashes Among Habitual Drunk Drivers, 331 New Eng. J. Med. 513 (1994)); Dept, of Justice, Office of Community Oriented Policing Services, Drunk Driving, Problem-Oriented Guides for Police, Problem-Specific Guides Series No. 36, p. 4 (Feb. 2006) (“By most estimates, although repeat *158 drunk drivers comprise a relatively small proportion of the total population of drivers, they are disproportionately responsible for alcohol-related crashes and other problems associated with drunk driving”).

 Brewer, supra, text accompanying nn. 23-24; L. Taylor & S. Oberman, Drunk Driving Defense § 1.01 (2007).

 See National Conference of State Legislatures (NCSL), Criminal Status of State Drunk Driving Laws, online at http://www.ncsl.org/print/ transportation/drunkdrivecriminal.pdf (2008) (surveying 50 States, the District of Columbia, and U. S. Territories, most of which treat the first DUI offense as a misdemeanor).