# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 22-3086

———————————————

United States of America

*Plaintiff - Appellee*

v.

Duramus T. Coleman, also known as Durumus T. Coleman

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

——————————

Submitted: May 8, 2023
Filed: August 1, 2023
[Unpublished]

——————————

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

——————————

PER CURIAM.

Duramus T. Coleman pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1] sentenced

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

him to 115 months' imprisonment. Coleman appeals, arguing that the district court erred by increasing his offense level under § 3C1.2 of the U.S. Sentencing Guidelines, Reckless Endangerment During Flight. We affirm.

Coleman was driving a Chevrolet Monte Carlo on October 22, 2021, on a highway in Charleston, Missouri. At approximately 10:37 a.m., State Highway Patrol Trooper David McKnight noticed that the Monte Carlo's registration tags had expired and decided to initiate a traffic stop. He activated the emergency lights and briefly sounded the siren of his marked patrol car, in response to which Coleman exited onto a residential street and accelerated. McKnight turned on the siren and gave chase.

Coleman fled, speeding through the residential area and committing multiple traffic violations. He made two quick turns without signaling and without stopping for the stop signs. Coleman then sped toward a T-intersection and drove into a multifamily housing area's yard. After leaving the roadway, Coleman leaped from the vehicle, which rolled for another 200 feet before coming to a stop.

Coleman continued to flee on foot, running between apartment buildings and ultimately entering an apartment, with McKnight following. The apartment's owner was nearby and told McKnight that she had left her door unlocked and had seen a man run into her apartment. She granted McKnight permission to enter the apartment. Upon discovering that the door was locked, McKnight contacted the housing authority. An official arrived with a key approximately twenty minutes later. Additional officers had arrived on scene to assist with Coleman's arrest.

Officers unlocked the door, entered the apartment with their service weapons drawn, and found Coleman hiding under a blanket in a bedroom near the back of the residence. He was arrested without incident. Officers found a Ruger LC9 inside the Monte Carlo, loaded with five rounds in the magazine and a round in the chamber.

At sentencing, the government presented evidence in support of Guidelines § 3C1.2, which provides for a 2-level increase "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." After hearing McKnight's testimony and viewing the dash-cam video, the district court applied the § 3C1.2 enhancement and imposed a sentence at the top of the Guidelines range.

Coleman argues that his flight had caused no danger "to another person" because no one happened to be present during his high-speed, late-morning flight through a residential area, his driving into the yard of a multifamily housing area, or his leaping from a still-moving vehicle. We need not decide whether the fortuity of these circumstances precludes the application of § 3C1.2, because Coleman's entry into and hiding within a private residence justifies the enhancement.

We have held that a defendant's uninvited entry into a private home to hide from pursuing officers "created a substantial risk of serious bodily injury to another person that was sufficient to justify the increase under § 3C1.2." United States v. McMahan, 782 F.3d 1015, 1016 (8th Cir. 2015). Such an entry, "like a traditional burglary, creates 'the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate.'" Id. (quoting James v. United States, 550 U.S. 192, 203 (2007)). Although there is no evidence here regarding whether the owner knew Coleman or whether she would have allowed him to enter the apartment, the undisputed facts indicate that she had neither invited Coleman to hide within her home nor had given him permission to lock her door. When McKnight and others undertook their owner-permitted entry of the apartment, they themselves faced the substantial risk of violent confrontation leading to serious injury. See U.S.S.G. § 3C1.2 cmt. n.4 (defining "another person" as including "any person, except a participant in the offense who willingly participated in the flight"). The district court did not clearly err in finding that Coleman had created a substantial risk of death or serious bodily injury to

another person during his flight, see United States v. Williams, 30 F.4th 796, 799 (8th Cir. 2022) (standard of review), and it properly applied Guidelines § 3C1.2.

The judgment is affirmed.

_____