

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-2-2009

# USA v. Harvey

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3114

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Harvey" (2009). *2009 Decisions.* Paper 2083.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2083

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3114

UNITED STATES OF AMERICA

v.

RAYMOND DARRYL HARVEY,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 06-cr-00348-1)
District Judge: Honorable Juan R. Sanchez

Submitted Under Third Circuit LAR 34.1(a)
November 21, 2008

Before: SCIRICA, Chief Judge, RENDELL, Circuit Judge and
O'CONNOR, Retired Associate Justice, U.S. Supreme Court

(Filed: January 2, 2009)

OPINION OF THE COURT

*Honorable Sandra Day O'Connor, retired Associate Justice of the United States
Supreme Court, sitting by designation.

RENDELL, <u>Circuit Judge</u>.

## I. Background

Raymond Harvey was arrested on August 8, 2005, following an investigation in which an undercover detective and confidential informant (CI) twice met with Harvey at his home to purchase cocaine. During the first meeting, Harvey sold the detective one-eighth of an ounce of cocaine and a Smith & Wesson .44 caliber handgun. He also displayed other guns to the detective. The detective subsequently had the CI contact Harvey again to inquire about purchasing additional cocaine and viewing a rifle that Harvey had previously offered to sell. At the second meeting, Harvey sold the detective seven grams of cocaine and allowed him to take the rifle and provide payment later.

After Harvey's arrest, detectives executed search warrants at both his home and the location from which he retrieved the rifle. At Harvey's home, the detectives recovered: a Wesson .414 caliber revolver with ammunition, $5,740.00 in U.S. currency, a scale with cocaine residue, and other drug paraphernalia. At the second location, the detectives found: bags containing marijuana, five additional firearms, and a backpack containing ammunition.

Harvey was indicted on five counts: two counts of knowingly distributing a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and three counts of possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and

2

924(e). The statutory maximum punishment for the first two counts was 30 years' imprisonment, and for the latter three counts, a life sentence with a mandatory minimum of 15 years' imprisonment. Harvey pleaded guilty to all five counts. He now challenges the sentence imposed by the District Court.

Following Harvey's guilty plea, the District Court convened a sentencing hearing, but continued it in order to consider additional evidence and argument regarding Harvey's prior convictions. At the second sentencing hearing, the District Court imposed a sentence of 195 months imprisonment, a term of supervised release of six years, a fine of $1,500, and a special assessment of $500. The District Court found that Harvey was a "career offender" pursuant to U.S.S.G. § 4B1.1, because his crime involved cocaine and he had two prior felony convictions for violent crimes. The District Court also found that Harvey was an "armed career criminal" within the meaning of 18 U.S.C. 924(e) and U.S.S.G. § 4B1.4(a) because he had been convicted twice of burglary and once of attempted burglary. Pursuant to U.S.S.G. § 4B1.4(b)(3)(A), Harvey's offense level was enhanced because he possessed the firearm in connection with cocaine distribution. The District Court determined that Harvey's offense level was 31 with a corresponding guideline range of 188 to 235 months. The District Court imposed a sentence within the guideline range: 195 months.

At the sentencing hearing, the District Court stated that it reviewed the Bills of

Information, the criminal complaints filed, and transcripts from the preliminary hearings.[1] Based upon its review of those documents, the District Court found that Harvey's two burglary convictions and his attempted burglary conviction constituted three violent felony convictions under the ACCA. Further, the District Court concluded that one burglary conviction and the one attempted burglary conviction were of dwellings, an element necessary for Harvey to qualify as a career criminal.

The informations included the following: the date of the burglary, the name of the defendant, the address burglarized, the name of the owner of the property, and the statement that the defendant "feloniously did enter a building or occupied structure . . . with intent to commit a crime therein . . . [without] being licensed or privileged to enter."

The District Court reviewed the preliminary hearing transcript and was satisfied that Harvey had pleaded guilty to burglarizing and attempting to burglarize dwellings. The District Court also made a factual finding that the attempted burglary conviction presented the potential for risk of physical injury, as the neighbor of the complaining witness saw Harvey attempting to open the window of the home at 1234 North Conestoga Street, called the police, and stopped Harvey from entering the home.

---

[1]The government offered as evidence of prior convictions copies of the state court Bills of Information, the judgments, the underlying criminal complaints, the police arrest reports, the preliminary hearing transcripts, and with respect to the one burglary conviction of 506 N. 55th Street only, a written guilty plea colloquy.

Harvey argues that the District Court erred by improperly enhancing his sentence on the basis of these three prior convictions. We have appellate jurisdiction over this case pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. For the reasons stated below, we will affirm the sentence imposed by the District Court.

## II. Discussion

Harvey argues on appeal that the District Court impermissibly relied upon the preliminary hearing transcripts to determine that he is an armed career criminal pursuant to 18 U.S.C.A. § 924(e), in violation of *Taylor v. United States*, 495 U.S. 575, 599 (1990) and, as applied to prior convictions resulting from guilty pleas, *Shepard v. United States*, 544 U.S. 13 (2005). This Court exercises plenary review over whether the District Court complied with the requirements of *Taylor*. *United States v. Richardson*, 313 F.3d 121, 124-25 (3d Cir. 2002).

To qualify for the enhancement, the Government must prove that Harvey was convicted of three prior "violent crimes." Therefore, in Harvey's case, the Government must establish that Harvey's two burglary convictions were of buildings or enclosed spaces, or what the Supreme Court refers to as "generic burglary."[2] S*ee Shepard*, 544 U.S. 13, 16-17 (2005) (citing *Taylor*, 495 U.S. 575, 599 (1990)). The Government also

---

[2]"Occupied structure," as defined in Pennsylvania's burglary statute, punishes unlawful entry into "any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." 18 Pa. C.S.A. § 3501. Therefore, the statute criminalizes conduct beyond generic burglary. *See United States v. Bennett*, 100 F.3d 1105, 1109 (3d Cir. 1996).

must demonstrate that Harvey's attempted burglary conviction presented a serious potential risk of physical injury to another. *See James v. United States*, 550 U.S. 192, 127 S. Ct. 1586, 1591 (2007) (courts must determine whether the elements of attempted burglary under the relevant state law justify including attempted burglary as a violent felony under the residual provision of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii)). Harvey argues on appeal that his two prior convictions for burglary did not satisfy the standard for generic burglary, as the Government did not prove sufficiently that the prior convictions involved buildings, and that the one prior conviction for attempted burglary did not present a serious potential risk of physical injury to another.

## A. The sentencing court's use of preliminary hearing transcripts does not offend *Shepard*.

> In *Shepard*, 544 U.S. 13, 26 (2005), the Court held that:
> under the ACCA to determine whether a plea of guilty to
> burglary defined by a nongeneric statute necessarily admitted
> elements of the generic offense is limited to the terms of the
> charging document, the terms of a plea agreement or
> transcript of colloquy between judge and defendant in which
> the factual basis for the plea was confirmed by the defendant,
> or to some comparable judicial record of this information.

The Government argues that preliminary hearing transcripts fall within the scope of the *Shepard* definition, stating:

> Under the rules of criminal procedure, a preliminary hearing
> is conducted by a magistrate following the filing of a criminal
> complaint but before a defendant can be held for court. At
> that hearing, the Commonwealth bears the burden of putting
> forward a prima facie case of the defendant's guilt, i.e., it
> must establish that there is some evidence as to each element

6

> of the offense that would be sufficient to establish the crime as a matter of law. See Pa. R. Crim. P. 543. . . . If the Commonwealth cannot carry its burden, then the complaint must be discharged. Pa. R. Crim. P. 543(B). ***
>
> After the filing of a complaint charging Harvey with burglary, a preliminary hearing was held at which the Commonwealth was required to put forward a prima facie case that Harvey had committed burglary . . . In each case, the Commonwealth satisfied [the element that the property burglarized was an "occupied structure"] by putting forth evidence establishing that the "occupied structure" in question was a building.

(Gov't Br. 27-28). At the preliminary hearings, Harvey did not contest the fact that the property in any of the cases was any other type of "occupied structure."[3] As the charges survived the preliminary hearing, argues the Government, the magistrate must have concluded that the Government sufficiently established a prima facie case of all the elements of burglary. Since that necessarily includes the element of "occupied structure," and the only evidence put forth as to that element was that each of the occupied structures in question was a building, then the crimes for which Harvey pleaded guilty were generic burglary.

Harvey argues that the preliminary hearing transcripts are akin to the impermissible documents evaluated in *Shepard*, a police report and complaint application. Under Harvey's interpretation of *Shepard*, the only documents that the District Court was

---

[3]Nor does Harvey now dispute that any of the burglaries involved a building; instead, he argues that the *Shepard*-permissible documents (namely, the informations and the one plea colloquy) do not state that he burglarized a building.

7

permitted to use to determine whether Harvey had pleaded guilty to generic burglary were the informations and the one written plea colloquy. As these documents do not explicate that Harvey burglarized and attempted to burglarize the dwellings of the owners listed on the informations, he argues that he did not adopt that fact when he pled guilty.

Not only is Harvey reading *Shepard* too narrowly, he is ignoring his own guilty plea. The sentencing court must ascertain "whether the plea had 'necessarily' rested on the fact identifying the burglary as generic . . .." *Shepard*, 544 U.S. at 21 (quoting *Taylor*, 495 U.S. at 602). It must do so based on a "judicial record." A police report is nothing but one version of the facts. The guilty plea to the information, taken together with the preliminary hearing transcript, is a reliable indicator of the nature of the crime. As the Government argues, Harvey's argument is tantamount to his urging that he committed a crime different from that to which he pleaded guilty. We are satisfied that the Government met its burden and that the documents reviewed by the sentencing court did establish that Harvey pleaded guilty to generic burglary.

**B.    Harvey's prior conviction for attempted burglary qualifies as a violent felony under the ACCA.**

Under Pennsylvania law, a person is guilty of attempt if, "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). An attempted burglary offense qualifies as an ACCA predicate "violent felony" if the state punishes behavior that "involves conduct that presents a serious potential risk of physical injury to another."

8

18 U.S.C.A. § 924(e)(2)(B)(ii); *see also James*, 550 U.S. 192, 127 S. Ct. at 1595

(evaluating the Florida attempt statute and finding that attempted burglary may be a

violent felony under 18 U.S.C. § 924(e)(2)(B)(ii), as "[i]nterrupting an intruder at the

doorstep while the would-be burglar is attempting a break-in creates a risk of violent

confrontation comparable to that posed by finding him inside the structure itself".

Accordingly, the elements of the offense of attempted burglary under Pennsylvania

law must equate to "conduct that presents a serious potential risk of physical injury to

another."[4]  In *James*, 550 U.S. 192, 127 S. Ct. at 1594, the Supreme Court held that the

Florida attempt law requiring an "overt act directed toward unlawfully entering or

remaining in" building qualified as a violent felony because it presented a serious

potential risk of physical injury to another.  Similarly, in *United States v. O'Brien*, 972

F.2d 47, 51 (3d Cir. 1992), we held that the Massachusetts attempt statute criminalizing

"any act" toward commission of breaking and entering satisfied ACCA's requirements.

In *O'Brien*, we relied upon *United States v. Payne*, 966 F.2d 4, 8 (1st Cir. 1992), in which

the First Circuit Court of Appeals stated that:

> So far as the risk of injury is concerned, we see little
> distinction between an attempted breaking and entering
> ... and a completed breaking and entering ... In all of
> these cases the risk of injury arises, not from the
> completion of the break-in, but rather from the

---

[4]Pursuant to *Taylor*, a court must consider the elements of the offense as defined by the relevant state law without inquiring into the particular offender's actual conduct. *See James*, 550 U.S. 192, 127 S. Ct. at 1594.

> possibility that some innocent party may appear on the scene while the break-in is occurring. This is just as likely to happen before the defendant succeeds in breaking in as after. Indeed, the possibility may be at its peak while the defendant is still outside trying to break in, as that is when he is likely to be making noise and exposed to the public view.

972 F.2d at 51.

Harvey argues that Pennsylvania law is different from the laws of Florida and Massachusetts as it does not require any act directed toward the commission of burglary, but criminalizes mere preparatory conduct. To the contrary, the Pennsylvania statute requires an "act" that is a "substantial step" toward commission of the offense, which is similar to the requirements of the Florida and Massachusetts attempt statutes. Several statutes that define attempted burglary in similar terms have been found to categorically describe "violent felonies." *See, e.g.*, *United States v. Lane*, 909 F.2d 895, 903 (6th Cir. 1990) (Ohio); *United States. v. Custis*, 988 F.2d 1355, 1363-64 (4th Cir. 1993) (Maryland); *United States v. Thomas*, 2 F.3d 79, 80 (4th Cir. 1993) (New Jersey). In *Commonwealth v. Melnyczenko*, 619 A.2d 719, 720 (Pa. Super. Ct. 1992), the Pennsylvania Superior Court reasoned that a defendant's walking through backyards at night "dressed in dark clothing and carrying a heavy gauge screwdriver, a ten-inch pry bar, two flashlights, a knit cap, and a pair of gloves" posed a risk of confrontation comparable to an intruder found at the doorstep. *See James*, 550 U.S. 192, 127 S. Ct. at 1600. The proximity to entry does not diminish the threat to third parties. Thus, we find

that Harvey's prior conviction for attempted burglary is a "violent felony" for purposes of the ACCA, as it involved conduct that presented a serious potential risk of physical injury to another.

Harvey's final two arguments can be disposed of summarily. As he did not object in the District Court, we review for plain error. We find that Harvey has two qualifying felony convictions under the career offender guideline, regardless of whether his conviction for attempted burglary was stale. We also find that the District Court did not plainly err in finding that Harvey had possessed a firearm in connection with his drug offenses as Harvey sold a handgun and cocaine to an undercover detective in his home, and, during the same transaction, showed him other firearms. Furthermore, the detectives uncovered an additional firearm and ammunition in Harvey's home where he twice sold cocaine to the undercover detective. It was not plain error to conclude that his access to guns and ammunition had the *potential* to facilitate his drug offense. *See United States v. Loney*, 219 F.3d 281, 288 (3d Cir. 2000) ("[t]he immediate availability of the gun while the defendant commits such a crime – that is . . . the gun's 'potential of facilitating' such an in-person felony offense – is sufficient to establish a relationship between the gun possession and the other offense") (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)); *see also United States v. Navarro*, 476 F.3d 188, 197 (3d Cir. 2007) (defendant who sold drugs for guns qualified for enhancement because "the possession of a firearm facilitates a drug transaction when that firearm serves as an item of trade").

For the reasons set forth above, we will AFFIRM the District Court's Judgment and

Commitment Order on all grounds.