[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12864
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cr-00026-LGW-JEG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WESLEY HAMPTON LINKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 27, 2013)

Before BARKETT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Wesley Linker appeals his 65-month sentence after pleading guilty to one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On appeal, Linker raises two arguments.

First, he argues that that the district court erred in applying a four-level enhancement, under U.S.S.G. § 2K2.1(b)(6)(B), for illegally possessing a firearm in connection with another felony offense.  He contends that the court wrongfully applied the enhancement, arguing that the evidence was insufficient to support the court's finding that he possessed the firearm while committing the separate felony offense of obstruction of a law enforcement officer with violence.  Second, Linker argues that his 65-month sentence is substantively unreasonable and that the district court should have varied downward from the guideline range, as his predicate crime of breaking and entering was of his parents' unoccupied home and, therefore, did not present a risk of violence.

I.

The record shows that, at sentencing, the government called Officer Mark Drury of the Darien Police Department to testify regarding the events immediately preceding Linker's arrest.  Officer Drury testified that on May 3, 2011, he stopped Linker for speeding on Interstate 95, and that his police car had a forward-mounted video camera that recorded the stop.  Officer Drury, narrating the video, testified

2

that he patted down Linker to make sure that he was not carrying any weapons and then obtained consent from Linker to search the vehicle. Drury then directed him to remove two dogs that were in the car and became suspicious as Linker took a long time to corral the dogs and was "fiddling around" with the front of his waistband.  Drury then testified that, after Linker removed the dogs, he was still holding his waistband and then a gun, which Linker had held, dropped to the ground.  When Linker reached down to pick up the gun, and Linker fought with Officer Luis Perez who was attempting to restrain him from behind,  Drury tased Linker, and Perez tackled him to the ground.

Linker testified that the firearm belonged to his girlfriend, Chelsea Smith, who had been riding in the passenger seat and had not told him about the gun until after they had been stopped. He claimed to have panicked and decided to hide the gun in his pants.  After the gun fell from his waistband, he saw Officer Perez step on the gun, and then claims he reached down and pulled the magazine out of the gun "to try to diffuse the situation."  He further testified that he did not pick up the gun, and that the gun never actually left the ground.  He also stated that he never pushed Perez, and that he had no recollection of what happened immediately after Officer Drury's taser hit him.

After hearing all of the evidence, the district court stated that it found Officer Drury's testimony credible and consistent with the video.  Accordingly, the

3

court applied the four-level § 2K2.1(b)(6)(B) enhancement.  The video, in relevant part, shows Officers Drury and Perez questioning Linker while all three men are standing in front of Drury's patrol car.  At one point, Linker, under direction from Perez, stands up, turns around, and places his hands on the hood of the car.  Perez then motions towards Linker and begins to lift up the back of his shirt, as if he is going to pat down Linker.  Linker, who was already looking down at the hood of the patrol car, suddenly looks to the ground, takes his hands off the car, and tries to retrieve something from the ground.  The ground is out of view from the camera.  As Linker is reaching towards the ground, Perez is standing behind him and attempts to restrain him, for about three to four seconds, while Linker resists.  Perez then flings Linker backwards and tackles him to the ground. The video shows that Officer Drury, who was out of view during the scuffle between Perez and Linker, then shot Linker with a taser after he had been pulled back by Perez, but before Perez had tackled Linker.  At that point, the two officers forcibly restrain Linker, who is lying on the ground and out of view of the camera.

We address each of Linker's arguments in turn.

## II.

Linker first argues that the district court erred in finding that he possessed the firearm and that he obstructed the law enforcement officers with violence, both necessary to support the sentencing enhancement for having "used or possessed

4

any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).

We review a district court's factual findings for clear error and its application of the Sentencing Guidelines to those facts *de novo*.  *United States v. Kinard*, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006).  A district court's enhancement of a defendant's offense level is a finding of fact that we review for clear error. *United States v. Rendon*, 354 F.3d 1320, 1331 (11th Cir. 2003).  The government bears the burden of establishing by a preponderance of the evidence any facts necessary to support a sentence enhancement.  *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999).  As we explained in *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995), "[a]lthough not as rigorous as the reasonable doubt or clear and convincing standards, the preponderance standard is not toothless.  It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence."

Section 2K2.1(b)(6)(B) of the Sentencing Guidelines states that a defendant's offense level is raised four levels if the defendant "used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  Under Georgia law, obstruction or hindrance of a law enforcement officer is a felony where a defendant "offer[s] or do[es] violence to the person of such officer."  O.C.G.A. § 16-10-24(b).  We have held that the

5

§ 2K2.1(b)(6)(B) enhancement is properly applied where the defendant assaulted police officers while in possession of a firearm. *United States v. Jackson*, 276 F.3d 1231, 1235 (11th Cir. 2001) (applying the enhancement from the 2000 Guidelines Manual which was previously found at § 2K2.1(b)(5)).[1]

First, the district court did not clearly err in finding credible Officer Drury's account of the events of Linker's arrest. *See United States v. Glinton*, 154 F.3d 1245, 1259 (11th Cir. 1998) (explaining that we defer to the district court's assessment of the credibility of sentencing witnesses, and we accept the court's assessment unless it is clearly erroneous). Although the video of the arrest does not conclusively show whether Linker attempted to grab, or was successful in grabbing, the firearm, it does show that Linker, immediately after the gun fell from his pants, reached towards the ground where the gun was located. Because of the positioning of the camera, the gun, and to where exactly Linker was reaching, is out of view. However, according to Drury's testimony, Linker picked up the gun,

---

[1] In *Jackson*, police officers stopped the defendant's vehicle and advised him that there was an outstanding warrant in his name and that he was under arrest. *Id.* at 1232-33. When the officers attempted to handcuff the defendant, he resisted, and a struggle ensued. *Id.* at 1233. Two of the arresting officers later testified that, during the struggle, the defendant repeatedly attempted to reach into his left pant-pocket. *Id.* The defendant was eventually subdued and handcuffed, and a subsequent search of his pocket revealed a firearm. *Id.* We affirmed the district court's application of the § 2K2.1(b)(6)(B) enhancement, holding the defendant's "attempted use [of the firearm] was sufficient to convert his possession of the firearm into possession of the firearm 'in connection with' that crime [of assault of a police officer]." *Id.* at 1235. We stated that, "[h]ad [the defendant] successfully pulled the pistol from his pocket, there is no doubt that the enhancement would apply." *Id.* Accordingly, we held that the defendant's attempt to retrieve the firearm during his felonious assault of the officers was sufficient for the enhancement to apply. *Id.*

6

and the district court found Drury's testimony credible while finding Linker's contrary account not credible. The video, inconclusive in itself, permits either account: the government's contention that Drury grabbed the gun, and Linker's contention that he attempted to eject the magazine from the gun to diffuse the situation. Therefore, as two permissible views of the evidence existed, the court's determination that Drury's account was credible was not clearly erroneous. *See United States v. Rodriguez De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (*en banc*) (explaining that under clear error review, when two permissible views of the evidence exist, the factfinder's choice between them will not be clearly erroneous).

Next, the district court did not err in applying the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Given the contents of Officer Drury's testimony and the video evidence, the court did not err in finding that Linker possessed the firearm "in connection with" another felony offense. In *Jackson*, we held that the § 2K2.1(b)(6)(B) enhancement applied where the defendant, while resisting arrest, attempted to retrieve a firearm from his pocket even though he never actually retrieved it. *See Jackson*, 276 F.3d at 1235. Here, similarly, Linker concealed the gun on his person during his encounter with the officers, and he attempted to reach towards the gun when it fell from his pants. Linker's firearm offense therefore was "in connection with" another felony offense, as his possession of the firearm "had the potential of facilitating" obstruction of an officer with violence. *See* § 2K2.1,

7

comment. n. 14(A).  The court therefore did not err in finding that the firearm offense was in connection with another felony, as an offer of violence in resistance of a law enforcement officer constitutes a felony offense under Georgia law.  *See* O.C.G.A. § 16-10-24(b).

Moreover, even if we were to assume, *arguendo*, that the district court did err in applying the § 2K2.1(b)(6)(B) enhancement, such error was harmless.  A Sentencing Guidelines miscalculation is harmless if the district court would have imposed the same sentence without the error.  *United States v. Barner*, 572 F.3d 1239, 1247-48 (11th Cir. 2009). The court stated at sentencing that, "[r]egardless of how the guidelines had come out, I think sixty-five months is the right sentence based on the § 3553(a) factors."  The court cited Linker's offense conduct and his prior criminal history as support of its decision to impose the 65-month sentence.

III.

Linker also argues that his 65-month sentence is substantively unreasonable and that the district court should have given him a downward variance, although he acknowledges that the district court properly calculated the Guidelines.[2]  Linker's argument for a downward variance relies on his claim that the burglary of his parents' home, which provided the predicate felony for determining his base offense level, had no propensity for violence because it was unoccupied at the

---

[2] We review the reasonableness of a sentence under a deferential abuse of discretion standard of review.  *Gall v. United States*, 552 U.S. 38, 41 (2007).

time.  However, the Supreme Court has rejected the contention that robberies of unoccupied dwellings do not constitute crimes of violence.  *See James v. United States*, 550 U.S. 192, 203 (2007) ("The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate.").  We, too, have held that a burglary of a dwelling is a crime of violence for purposes of the Sentencing Guidelines.  *United States v. Davis*, 881 F.2d 973, 976 (11th Cir. 1989).

The sentencing factors set forth in 18 U.S.C. § 3553(a) also supported a within-Guidelines sentence.  The record shows that Linker possessed a firearm as a convicted felon, attempted to hide it from the police, and tried to retrieve it once it fell to the ground.  The presentence investigation report also indicated that Linker had numerous previous convictions for larceny, burglary, and breaking and entering.  The court, therefore, properly considered both the nature and circumstances of the offense and Linker's personal history and characteristics under § 3553(a) when it imposed the within-Guidelines sentence.

**AFFIRMED.**