[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15103
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-00114-JES-UAM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL CHARLES KIRK,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 16, 2014)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Daniel Charles Kirk appeals his conviction and fifteen-year sentence for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  On appeal, Kirk argues that the district court erred in applying the fifteen-year mandatory minimum sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), for two reasons.  First, he argues that his prior burglary offenses do not qualify as "violent felonies" under the ACCA.  Second, he argues that the government did not show that the burglaries were "committed on occasions different from one another" as required by the ACCA.  As to his conviction, he argues that the Constitution requires the government to prove that a firearm or ammunition "substantially affected" interstate commerce before its possession can be punished under § 922(g).

We address each of his arguments in turn, and after careful consideration, we affirm his conviction and sentence.

## I.

Kirk's first argument on appeal is that his prior burglary offenses do not qualify as violent felonies under the ACCA.  We consider de novo whether a particular conviction qualifies as a violent felony for purposes of the ACCA.  United States v. Matthews, 466 F.3d 1271, 1273 (11th Cir. 2006).

Under the Sentencing Guidelines, defendants who are subject to enhanced sentences under 18 U.S.C. § 924(e) are considered armed career criminals.  See

2

U.S. Sentencing Guidelines Manual § 4B1.4(a).  The ACCA mandates a fifteen-year minimum term of imprisonment for defendants who violate § 922(g) and have three previous convictions for "violent felon[ies] . . . committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  Id. § 924(e)(2)(B)(ii).

The ACCA's inclusion of convictions for crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another" is known as the statute's "residual clause."[1]  Id.; see United States v. Weeks, 711 F.3d 1255, 1262 (11th Cir.), cert. denied, 134 S. Ct. 311 (2013).  The Supreme Court requires courts to use a "categorical approach" and a "comparative inquiry" to determine whether a crime qualifies as a violent felony under the ACCA's

---

[1]    Because Kirk and the government agree that Florida's definition of burglary is broader that the definition of generic burglary and that the enumerated offenses clause does not apply to Kirk's case, we only consider whether Kirk's prior convictions fall within the residual clause of the ACCA.  See, e.g., Matthews, 466 F.3d at 1276 ("The district court did not decide whether burglary of the curtilage of a structure is a 'generic burglary' as discussed in Taylor[v. United States, 495 U.S. 575, 599, 110 S. Ct. 2143, 2158 (1990)].  Given our holding that burglary of the curtilage of a structure (as defined by Florida law) 'otherwise involves conduct that presents a serious potential risk of physical injury to another,' we need not express an opinion on whether the offenses in question here are 'generic burglaries' as discussed in Taylor.").

3

residual clause. United States v. Petite, 703 F.3d 1290, 1294 (11th Cir.), cert.

denied, 134 S. Ct. 182 (2013).

> Using the categorical approach, the central inquiry is whether the offense presents a serious potential risk of physical injury to another comparable to the risk posed by the ACCA's enumerated crimes. . . . [A] crime involves the requisite risk when the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses.

Id. (second alteration in original) (citations and internal quotation marks omitted).

The Florida burglary statute under which Kirk was convicted prior to his

§ 922(g) offense defines burglary as:

1.  Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
2.  Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
    a.  Surreptitiously, with the intent to commit an offense therein;
    b.  After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
    c.  To commit or attempt to commit a forcible felony, as defined in s. 776.08.

Fla. Stat. § 810.02(1)(b).

Kirk argues that because it is unclear whether his prior convictions under the

Florida statute were based on his "entering" or "remaining in" a dwelling,[2] this

---

[2] Each criminal information regarding Kirk's prior convictions reads that on a particular date, Kirk "did unlawfully enter or remain in a certain structure, to-wit: a dwelling"

4

Court must presume that they were based on his remaining in a dwelling, which he argues presents less of a risk of physical injury than generic "unlawful entry" burglary and consequently cannot qualify as violent felonies under the ACCA. However, the Supreme Court has held that "a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, <u>or remaining in</u>, a building or structure, with intent to commit a crime." <u>Taylor v. United States</u>, 495 U.S. 575, 599, 110 S. Ct. 2143, 2158 (1990) (emphasis added). The Court has recognized the risks posed by such conduct: "The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." <u>James v. United States</u>, 550 U.S. 192, 203, 127 S. Ct. 1586, 1594 (2007). The Supreme Court commented on these risks in the context of considering whether attempted burglary under Florida law, with burglary being defined by the previous version of § 810.02, constitutes a violent felony for purposes of the ACCA. <u>See id.</u> at 195, 197, 127 S. Ct. at 1590–91. The definition of burglary under Florida law at the

---

located at a particular address, "with the intent to commit an offense therein, to-wit: Theft, contrary to Florida Statute 810.02."

time was "entering <u>or remaining in</u> a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." <u>Id.</u> at 197, 127 S. Ct. at 1591 (emphasis added). Thus, the Court was considering a statute with a "remaining in" element at the time it explained the risks of physical injury associated with burglary as defined under Florida law, and the Court found that attempted burglary fell within the ACCA's residual clause as a violent felony involving conduct that presents a serious risk of physical injury to another. <u>Id.</u> at 195, 127 S. Ct. at 1590. We therefore have no doubt that "remaining in" burglary involves the same significant risks of physical injury to another.

Furthermore, we have previously held that a conviction under the earlier version of § 810.02, which included a "remaining in" element, was a conviction for a violent felony under the ACCA's residual clause. <u>See</u> <u>Matthews</u>, 466 F.3d at 1275 (holding that, in the context of a conviction for burglary based on entry into the roofed portion or curtilage of a structure, "even if [the defendant]'s third-degree burglary convictions [were] not convictions for 'generic burglary,' they [were] convictions for violent crimes under the ACCA because they satisf[ied] th[e] alternative definition" under the residual clause). Although Florida's

6

definition of burglary encompasses the curtilage of a structure and is therefore broader than the definition of generic burglary,[3] we explained in Matthews:

> Regardless of whether a burglar breaches the roofed portion of a structure, his unlicensed entry into the enclosed area surrounding that structure may bring him into close physical proximity with the same persons he might encounter were he to enter the structure. He may come into contact with the property's owners, occupants, or caretakers. His close physical presence to the structure could lead an innocent person to investigate why he is there, and his presence alone could reasonably be perceived by any of these persons as threatening. Either the innocent or the burglar might react violently. In short, the burglar's presence in the curtilage of the structure presents a serious potential risk that violence will ensue and someone will be injured.

Id. We thus held that burglary under the prior version of § 810.02 qualified as a violent felony under the ACCA's residual clause even though it was unclear from the record there whether the defendant had entered into the roofed portion or the curtilage of the structures at issue. Id.

Kirk argues that this precedent is not applicable to his case because we did not consider the "remaining in" portion of the statute in Matthews. However, the Supreme Court in James expressed nearly identical concerns about potential

---

[3]    In conducting an ACCA analysis, sentencing courts are bound to follow any state court decisions that define or interpret the statute's substantive elements. See Johnson v. United States, 559 U.S. 133, 138, 130 S. Ct. 1265, 1269 (2010) (noting that federal courts are bound by a state supreme court's interpretation of state law, including its determination of the elements of a state statute, in determining whether an offense constitutes a violent felony under the ACCA). In addressing the state's burglary statute, the Florida Supreme Court has held: "There is no crime denominated burglary of a curtilage; the curtilage is not a separate location wherein a burglary can occur. Rather, it is an integral part of the structure or dwelling that it surrounds. Entry onto the curtilage is, for the purposes of the burglary statute, entry into the structure or dwelling." Baker v. State, 636 So. 2d 1342, 1344 (Fla. 1994). "[T]he inclusion of curtilage takes Florida's underlying offense of burglary outside the definition of 'generic burglary' set forth in Taylor . . . ." James, 550 U.S. at 212, 127 S. Ct. at 1599.

7

violence when considering attempted burglary based on the earlier version of § 810.02, which defined burglary as "entering or remaining in a structure or a conveyance with the intent to commit an offense therein."  See James, 550 U.S. at 197, 203, 127 S. Ct. at 1591, 1594–95.  Accordingly, we think the same risks as explained in Matthews and James are present in the context of "remaining in" burglary.  In sum, we find that Kirk's prior burglary convictions qualify as violent felonies under the ACCA's residual clause regardless of whether they were based on his "entering" or "remaining in" the dwellings at issue because either type of offense "involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).

## II.

Kirk's second argument on appeal is that the government did not prove that his prior convictions were for offenses "committed on occasions different from one another" as required for the ACCA mandatory minimum to apply.  "Whether prior convictions meet the ACCA's separate offenses requirement is a legal determination we review de novo."  United States v. Sneed, 600 F.3d 1326, 1330 n.5 (citing United States v. Pope, 132 F.3d 684, 689 (11th Cir. 1998)).

A defendant is subject to the ACCA enhancement only if he has three prior convictions for qualifying offenses "committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  This requirement means that the defendant's

prior convictions must have resulted from crimes that are "temporally distinct" and arise out of "separate and distinct criminal episode[s]." Sneed, 600 F.3d at 1329 (internal quotation marks omitted). "'[S]o long as [the] predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA.'" Weeks, 711 F.3d at 1261 (alterations in original) (quoting Pope, 132 F.3d at 692). "Distinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small." Sneed, 600 F.3d at 1330 (internal quotation marks omitted); see also Weeks, 711 F.3d at 1261 (holding that the defendant failed to establish that the district court erred in classifying his three burglary convictions as separate ACCA predicate offenses even though two of the burglaries occurred on the same date and in close proximity to each other because "even small gaps in time and place are sufficient to establish separate offenses"); United States v. Proch, 637 F.3d 1262, 1265–66 (11th Cir. 2011) (holding that two burglaries committed on the same day at different addresses on the same street constituted separate and distinct criminal episodes).

We have held that the government must prove that prior offenses occurred on different occasions using only Shepard documents. See Sneed, 600 F.3d at 1332–33 (holding that police reports may not be used for ACCA inquiries and vacating the defendant's § 924(e)-enhanced sentence because the government had

failed to produce any Shepard-approved documents establishing that the defendant's prior offenses occurred on different occasions); Weeks, 711 F.3d at 1259 ("[F]or ACCA purposes, district courts may determine both the existence of prior convictions and the factual nature of those convictions, including whether they were committed on different occasions, so long as they limit themselves to Shepard-approved documents.").

In this case, the charging documents submitted by the government show that Kirk pled guilty to burglarizing seven different dwellings, located at seven different addresses and owned by seven different people, on or about three separate dates—May 5, August 16, and August 19, 2002. The government therefore used Shepard-approved documents to prove that Kirk's prior offenses arose from separate and distinct criminal episodes that were temporally distinct in that they were committed on at least three different dates. See Weeks, 711 F.3d at 1261; Proch, 637 F.3d at 1265–66. Accordingly, Kirk has failed to show that the district court erred in concluding that his prior convictions were for offenses "committed on occasions different from one another."

## III.

Kirk's final argument on appeal is that the district court erred in denying his motion for a judgment of acquittal because the government failed to prove that the firearm and ammunition in his possession "substantially affected" interstate

10

commerce.  Kirk also argues that § 922(g) is an unconstitutional exercise of Congress's Commerce Clause power as applied to purely intrastate conduct, such as mere possession of a firearm, under United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624 (1995).  Kirk concedes that these arguments are foreclosed by "Eleventh Circuit precedent directly to the contrary," but he presents the arguments "in order to preserve the issue for further review."

It is unlawful for a convicted felon to "possess in or affecting commerce, any firearm or ammunition."  18 U.S.C. § 922(g)(1).  The Supreme Court, in considering the predecessor statute to § 922(g), held that the interstate commerce element is met by demonstrating a "minimal nexus that the firearm have been, at some time, in interstate commerce."  Scarborough v. United States, 431 U.S. 563, 575, 97 S. Ct. 1963, 1969 (1977).  In Lopez, the Supreme Court held that gun control legislation related to the possession of firearms in school zones was an invalid exercise of Congress's Commerce Clause power partly because the statute could not be sustained under the reasoning that the regulated activities, in the aggregate, substantially affected interstate commerce.  See Lopez, 514 U.S. at 561, 115 S. Ct. at 1631.  In addition, the Supreme Court emphasized that the challenged statute "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affect[ed] interstate commerce."  Id.

11

Since Lopez, we have continually held that § 922(g) is not a facially unconstitutional exercise of Congress's Commerce Clause power because unlike the statute at issue in Lopez, § 922(g) contains a jurisdictional requirement. See, e.g., United States v. Jordan, 635 F.3d 1181, 1189 (11th Cir. 2011) ("We have repeatedly held that Section 922(g)(1) is not a facially unconstitutional exercise of Congress's power under the Commerce Clause because it contains an express jurisdictional requirement."); United States v. Scott, 263 F.3d 1270, 1273 (11th Cir. 2001) (reaffirming the holding that "the jurisdictional element of the statute, i.e., the requirement that the felon 'possess in or affecting commerce, any firearm or ammunition,' immunizes  § 922(g)(1) from [a] facial constitutional attack"); United States v. Dupree, 258 F.3d 1258, 1260 (11th Cir. 2001) (upholding the conclusion that "the jurisdictional element of § 922(g) brings it within the commerce powers of the Congress"); United States v. McAllister, 77 F.3d 387, 389–90 (11th Cir. 1996) (holding that the jurisdictional element of § 922(g) defeats a facial challenge to the statute even after the Supreme Court's decision in Lopez).

Moreover, we have also held that § 922(g) is not unconstitutional as applied to a defendant who merely possessed a firearm within state lines so long as the government introduces sufficient evidence showing that the firearm has a minimal nexus to interstate commerce, i.e., that the firearm was manufactured, assembled, or sold outside the state or that it travelled in interstate commerce.  See, e.g.,

12

Jordan, 635 F.3d at 1189 (holding that § 922(g) was not unconstitutional "as applied to a defendant who possessed a firearm only intrastate" because the government showed that the firearm involved was manufactured and assembled outside the state); Dupree, 258 F.3d at 1260 (holding that § 922(g) requires only a minimal nexus to interstate commerce and that the defendant's actions of brandishing in Georgia a firearm that was manufactured in California satisfied the jurisdictional requirement of § 922(g)); McAllister, 77 F.3d at 390 (holding that even in the wake of Lopez, § 922(g) is constitutional as applied to a defendant who merely possessed a firearm within state lines so long as the firearm has a minimal nexus to interstate commerce, an element that was satisfied in that case because the firearm possessed by the defendant had travelled in interstate commerce).

Here, the government produced evidence that the firearm and ammunition Kirk possessed in Florida were manufactured outside the state and therefore had necessarily traveled in interstate commerce. Given our undisturbed precedent, such evidence was sufficient to demonstrate the minimal nexus between the firearm and ammunition Kirk possessed and interstate commerce. Therefore, the jurisdictional element of § 922(g) was satisfied, and the statute is not unconstitutional as applied to Kirk's conduct. Accordingly, the district court did not err in denying Kirk's motion for a judgment of acquittal, and Kirk's conviction and sentence are

13

AFFIRMED.